**Revolving Credit Agreement**

This Revolving Credit Agreement ("Agreement") is made and entered into on February 01, 2023 (the "Effective Date") between **Peak API Lending, LLC**, a Colorado Limited Liability Company ("Lender"), and **Bright Path Laboratories,** a Delaware Corporation ("Borrower") wherein Lender will loan Borrower money to fund product Purchase Orders with its supplier.

## 1.Establishment of Account

Under the terms and conditions set forth in this Agreement, Lender and Borrower agree to the establishment of a revolving credit account (the "Account") under which Lender, at its sole option, agrees to fund approved expenses associated with ordering and providing product to its customers.  Borrower agrees to have its customers make payments on their invoices directly to a bank account in Borrower's name but controlled by Peak API Lending, LLC's attorney, which both parties have agreed shall act as an escrow agent, and such funds will be distributed per an Escrow Agreement between the parties (Exhibit A).

## 2.Maximum Amount

The unpaid principal balance in the Account may not exceed $500,000.00 at any one time.

## 3. Periodic Statement

Lender will provide Borrower with a statement as of the beginning of each calendar month in which there is any unpaid balance under this Agreement. The statement will include the unpaid balance at the beginning and end of the period; an identification of the approved expenses during the period, the amount of funds leant during the period for each approved expense; and the date of each disbursement of funds from the Account for an approved expense; any payments made on behalf of Borrower by Escrow Agent; and the amount of any finance charge.

## 4.Payment and Delinquent Charges

Borrower agrees as a party to the Escrow Agreement to have the escrow agent repay the unpaid principal amount from customer payments on invoices.  If any payment is late by 30 days or more, a delinquent charge in the amount of $5,000.00 will be imposed for each month the payment is late.

### 5.Prepayment

Buyer may pay any part or all of the unpaid balance on the Account at any time. No prepayment charge will be imposed for any prepayment.

### 6.  Indemnification of Lender

Borrower agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement.  The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder. Borrower's indemnity obligations under this section shall not in any way be affected by the presence or absence of covering insurance, or by the amount of such insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under any insurance policy or policies affecting the Collateral and/or Borrower's business activities. Should any claim, action or proceeding be made or brought against Lender by reason of any event as to which Borrower's indemnification obligations apply, then, upon Lender's demand, Borrower, at its sole cost and expense, shall defend such claim, action or proceeding in Borrower's name, if necessary, by the attorneys for Borrower's insurance carrier (if such claim, action or proceeding is covered by insurance), or otherwise by such attorneys as Lender shall approve. Lender may also engage its own attorneys at its reasonable discretion to defend Borrower and to assist in its defense and Borrower agrees to pay the fees and disbursements of such attorneys.

### 7.Governing Law

This agreement will be governed in all respects by the laws of the State of Colorado.

**8. Disputes and Arbitration**

     **8.1  Negotiation**. The parties shall negotiate in good faith to resolve any claim, dispute or controversy between them regarding this Agreement. If such negotiations do not resolve the claim or dispute to the satisfaction of both parties, then an authorized senior officer of each party shall use good faith efforts to resolve the claim, dispute or controversy.  Unless otherwise agreed in writing by the negotiating parties, such negotiation shall end seven (7) days after one party requests that such senior officers try to resolve the claim, dispute or controversy.  All offers, promises, conduct and statements, whether oral or written, made in the course of the negotiation by any of the parties, their agents, employees, experts and attorneys are confidential, privileged and inadmissible for any purpose, including impeachment, in arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the negotiation. At no time prior to said seven (7) days shall either side initiate an arbitration related to such claim, dispute or controversy; provided that this limitation is inapplicable to a party if the other party refuses to comply with this Section 15.1.

     **8.2 Arbitration.** Any unresolved dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate shall be determined by arbitration administered by JAMS ("JAMS") and shall be final and binding on the parties.  The parties may mutually agree in writing to administration of the Arbitration by a party other than JAMS if agreed to in writing by both Parties.  The arbitration shall be initiated by either party by arbitration notice to the other party.  The parties may settle or otherwise resolve any claim, dispute or controversy at any time prior to the arbitrator rendering its final award and thereby terminate the arbitration.  The arbitrator's interim rulings, decisions, measures and orders and the final award may be entered, enforced and judgement rendered in any court having jurisdiction. The arbitration shall be administered by one (1) neutral and independent arbitrator with experience as an arbitrator and with the type of claim, dispute or controversy. Should the parties not mutually agree upon the arbitrator within fifteen (15) days after the arbitration notice, JAMS (or whoever has been mutually decided as an arbitrator of such dispute) shall select the neutral, independent and experienced arbitrator from its arbitrators as quickly as practicable. The parties may not object to such arbitrator selection.

**8.3 One Arbitrator.** The arbitration shall be administered by one (1) neutral and independent arbitrator with experience as an arbitrator and with the type of claim, dispute or controversy. Should the parties not mutually agree upon the arbitrator from JAMS arbitrators within fifteen (15) days after the arbitration notice, JAMS shall select the neutral, independent and experienced arbitrator from its arbitrators as quickly as practicable. The parties may not object to JAMS' arbitrator selection.

**8.4 Rules and Procedures**. The arbitration shall be conducted pursuant to JAMS Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. The rules for arbitration may be different if mutually agreed to between the parties.  The arbitrator shall establish a reasonable arbitration schedule and reasonably try to conclude the arbitration and issue its final written award within one hundred (100) days after the arbitrator is selected. The arbitrator must agree to the foregoing schedule before accepting its appointment.  Failure to meet any of the arbitrator's schedules will not render the final award invalid, unenforceable or subject to being vacated. However, the arbitrator may impose appropriate sanctions and draw appropriate adverse inferences against the party primarily responsible for the failure to meet any such deadlines. Except as requested by a party or the arbitrator, no arbitration hearing or meeting shall be required, and any meeting or hearing may be held in person, by videoconference or by other means.

**8.5 Arbitrator's Authority and Award**. As herein provided, the arbitrator shall have the authority to administer the arbitration and make interim rulings, decisions, measures and orders and the final award giving consideration to this Agreement, the briefs and information submitted by the parties, the advice of consultants and advisors engaged by the arbitrator, discovery, the applicable governing law, and other matters which the arbitrator deems proper. Before making its award, the arbitrator may ask each party to submit its proposed remedy or remedies to the arbitrator and each other. The arbitrator's interim rulings, decisions, measures and orders and the final award, as applicable, shall not:

(1) contain or use any information not previously made available to the other party;

(2) amend or conflict with this Agreement; and

(3) propose or grant punitive damages and/or damages exceeding actual damages.

**8.6 Costs.**  Pending the final award, the arbitrator's compensation and expenses shall be advanced and paid equally by each party. Copies of requested documents, depositions and information that the arbitrator agrees are not privileged and are subject to discovery shall be provided at the sole expense of the party requesting such documents, depositions and information. In any arbitration arising out of or related to this Agreement, the arbitrator shall award to the prevailing party, if any, the costs, attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration, and arbitration costs. If the arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the arbitrator may award the prevailing party an appropriate percentage of the costs, attorneys' fees and arbitration costs reasonably incurred by the prevailing party in connection with the arbitration.

**9.Signatories**

This Agreement shall be signed by Nicholas Matthews on behalf of Colorado NewCo, LLC and by Tony Quinones of Bright Path Laboratories Inc., a Delaware Corporation. The Agreement is effective as of February 01, 2023.

LENDER:

By: _____          Date:        01/26/2023

Peak API Lending, LLC
Nicholas Matthews, Member

BORROWER:

By: _____          Date:        January 26, 2023

Bright Path Laboratories Inc., a Delaware Corporation
Tony Quinones, Chairman and CEO