| | |
|---|---|
| JAMS Denver<br>410 17th Street, Suite 2440<br>Denver, CO  80202 | |
| **PEAK API LENDING, LLC and KFM CLINICAL SOLUTIONS, LLC**<br>Claimants<br><br>v.<br><br>**BRIGHT PATH LABORATORIES, INC.**<br>Respondent | JAMS Case ID **34345** |
| **FINAL AWARD**<br>**INCLUDING ATTORNEY FEES AND COSTS** | |

In the Partial Final Award, Claimant Peak API Lending, LLC ("Peak") was awarded $282,128.00 in damages on its claim of breach of contract against Respondent Bright Path Laboratories, Inc. ("BPL"), and Peak's other claims in the arbitration were denied, as were the claims of Claimant KFM Clinical Solutions, LLC ("KFM"). BPL was determined to be the prevailing party with regard to KFM's claims and was found to be entitled to an award of reasonable costs and attorney fees incurred in defending against those claims. Peak was determined to be the prevailing party between Peak and BPL and was found to be entitled to an award of a percentage of its reasonable costs and attorney fees incurred in connection with the arbitration since it prevailed on some but not all of its claims. The parties have since briefed the issue of attorney fees and costs.

The Final Award, incorporating the award of fees and costs is as follows:

**Fees and Costs Related to Peak's Claims**

Although Peak is the prevailing party on its claims, Peak prevailed only on its breach of contract claim, and did not prevail on its unjust enrichment claim or its claims sounding in fraud.

Further, Peak sought $1,592,163 in damages, which was primarily related to anticipated sales proceeds, but it recovered only $282,128.

A determination of what constitutes reasonable attorney fees normally involves calculation of the number of hours reasonably expended multiplied by a reasonable hourly rate, which amount may then be adjusted in light of factors related to fees set forth in the Rules of Professional Conduct.

As a preliminary matter, Peak seeks to recover $131,223.25 in attorney fees, however, that amount appears to include all time billed in connection with both Peak's and KFM's claims. In such regard, the related billing summaries for Peak include multiple full-day entries between August 12 and 20 in connection with the arbitration hearing and other similar entries in connection with events such as depositions. Based on the nature of the billing entries and the time associated with them, either Peak was double-billed or the billing entries reflect the total amount of time spent for both clients. The latter clearly appears to be the case, particularly since the associated descriptions suggest that work was simply performed on the arbitration as a whole, and no entries reflect that work was attributable to Peak alone or Peak and KFM jointly. In either event, however, it would be improper to award the full amount of the billed fees and expenses against BPL. Further, even if the time was somehow spent on Peak alone, the billing entries reflect almost 270 hours of attorney time and another 114 hours of time by support staff. By comparison, BPL's counsel spent 157 hours defending both sets of claims. Although the time spent by the Claimants and Respondent are not expected to be equal, 384 hours of time spent on just Peak's claims would be unreasonable in this case.

Peak and KFM are separate entities; they had different agreements with BPL that involved different obligations; Peak's and KFM's claims were based on different factual theories that relied on different evidence; and the parties sought different damages. While Peak had significant success on one of its claims, KFM did not prevail on any of its claims, and awarding the full amount of the attorney fees sought by Peak would effectively result in BPL paying attorney fees that should be attributed to the representation of KFM in contradiction to the Sales Agreement. Under the circumstances, Peak will be credited for half the time related to the attorney fees that it seeks.

Additionally, as argued by BPL, some of the time spent by Peak appears excessive. More specifically, almost 73 hours of time (consisting of a little over 20 hours by staff and a little over 52 hours by counsel) was billed to Peak as preparation for the three depositions. The depositions themselves, however, were relatively short and took only about 12 hours in total. Moreover, it should take substantially less time to prepare to defend a deposition than it should take to prepare to conduct one. For purposes of comparison, BPL's counsel spent just under 20 hours preparing for the 6 hours of depositions it conducted. Although it is reasonable that preparing to take a 6-hour deposition could take more time than preparing to take two shorter depositions, it should not take 53 hours more.

For purposes of the initial lodestar amount, the time reasonably expended on all of Peak's claims in the arbitration is determined to be a total of 175 hours, consisting of 125 hours of attorney time and 50 hours of staff time. The reasonable hourly rate for the attorney time is $425 per hour and for the staff time is $175 per hour in 2023 and $195 per hour in 2024. At those

rates, not including any reduction based on partial success, the lodestar amount for reasonable time spent on work for Peak is $62,721.50.

Peak's arguments that it should be awarded the full amount of its attorney fees is contrary to the ruling in the Partial Final Award that Peak is entitled to only a percentage of its costs and fees and is inconsistent with the language of its agreements with BPL regarding the award of attorney fees. On the other hand, BPL's suggestion that Peak should receive only a third of its reasonable fees and cost because it prevailed on one of three claims does not fairly take into account the greater context of the arbitration. Although Peak did not, for instance, prevail on its claim for unjust enrichment, such a claim is often an alternative brought in the event a claimed contract is found not to be valid. Peak's claim for unjust enrichment was primarily denied because it had valid contracts with BPL, and the damages sought overlapped with those sought by its breach of contract claim and were equal to the amount it actually recovered. Most if not all of the evidence presented in connection with the unjust enrichment had to be presented in for the breach of contract claim, and the claim likely did not significantly increase the amount of costs or fees incurred. Peak's fraud-related claims, however, did involve different evidence, were more complex than the unjust enrichment claim, sought damages that were not ultimately recovered, and likely did have a more notable impact on the fees and costs incurred. Lastly, although Peak technically prevailed on its breach of contract claim, its primary assertions were that BPL failed to hire a customs agent, shipped the semaglutide via FedEx rather than through a port of entry, did not supply proper paperwork to US Customs, and did not respond to the notice of FDA action. None of those things constituted breaches of the agreements between Peak and BPL. Further, as noted above, Peak sought almost $1.6 million in damages but recovered just over

$280 thousand. Although Peak prevailed on a substantial issue, it was a limited success in light of its claims and the amount at issue.

It should be noted that Peak presents and analyzes the factors in Rules of Professional Conduct, however, it does not propose increasing or decreasing the amount of fees it should be awarded based upon those factors. Instead, it uses those factors to assert that the time spent and rates charged were justified. The hourly rates charge to Peak were reasonable in this case, but the total time proposed was not reasonable for the reasons discussed above. Additionally, the amount recoverable should be reduced based on Peak's limited success on its claims, consistently with the results obtained.

Ultimately, based upon the language in section 8.6 of the Revolving Credit Agreement and section 9.8.6 of the Escrow Agreement, Peak is awarded 2/3 of the lodestar amount determined above. **The total amount of fees awarded to Peak is $41,814.33.**

Peak also seeks its expenses and the costs of mediation, both of which are recoverable pursuant to the agreements between the parties. The billing statements submitted show $5,388.40 in arbitration related expenses related to items such as printing expenses and transcripts. Peak also incurred an additional $5,916.63 in airfare, hotel, and meals to attend the arbitration. Although BPL takes issue with the airfare and expenses to attend the arbitration, there are valid reasons for a party to prefer to attend an arbitration in person and the total amount is not unreasonable considering the specific costs and in light of the amount at issue in the case. The expenses are all reasonable, however, they were incurred for both Peak and KFM, and Peak is only entitled to recover half of the $11,305.03 in costs. **Accordingly, Peak is awarded an additional $5,652.52 in costs not including JAMS fees.**

5

**Fees and Costs Related to KFM's Claims**

BPL incurred $62,884.00 in attorney fees defending against both Peak's and KFM's claims. With regard to those fees, BPL's counsel spent 157.21 hours and charges $400 per hour. The time spent is reasonable in connection with the entire case, and the hourly rate is reasonable. Since the issues were intertwined on both sides, BPL proposes that its fees be apportioned evenly between Peak's claims and KFM's claims, and the proposal appears to be the most reasonable way to apportion fees in this case. **BPL is, therefore, awarded $31,442.00 in reasonable attorney fees incurred in defending against KFM's claims.**

BPL also requests that it be awarded 2/3 of the remaining fees because it prevailed on two of Peak's claims. The request is contrary to the determination in the Partial Final Award that Peak was the prevailing party as between Peak and BPL. In the end, BPL failed to repay Peak over $280,000 and Peak had to proceed through this arbitration to obtain an award for recovery of those funds.

BPL also incurred $5,920.18 in costs, not including JAMS fees. The expenses were all reasonable, but only half will be attributed to defending against KFM's claims. **Accordingly, BPL is awarded an additional $2,960.09 in costs not including JAMS fees.**

**Arbitration Costs**

Pursuant to the agreements between the parties, each party was supposed to equally advance their share of arbitration costs, and the prevailing party is to be awarded arbitration costs as part of the final award.

Prior to the arbitration hearing, KFM and Peak advanced half of the total retainer required by JAMS, and BPL advanced the other half. Following the hearing, JAMS required that

each side advance an additional $3,500 to cover the fees associated with apportioning fees and costs. BPL did not advance that amount and Peak and KFM eventually submitted the full $7,000 subject to an offset in the final award.

Setting aside the additional $7,000 retainer, Peak would otherwise be entitled to recover half of the amount of JAMS fees that were submitted jointly by Peak and KFM (half for Peak's claims but none for KFM's claims), however, BPL would be entitled to recover half of the amount of JAMS fees it submitted (half for successfully defendant against KFM's claims). In other words, had BPL advanced its half of the additional $7,000 retainer so that each side had submitted the same amount, the two amounts would offset one another—both sides would be owed the same amount in arbitration costs as they owed the other side. However, since Peak advanced an additional $3,500 that should have been paid by BPL, Peak is entitled to recover that amount from BPL. **Accordingly, BPL is awarded an additional $3,500 for arbitration expenses.**

**FINAL AWARD**

- Claimant Peak API Lending, LLC is awarded $282,128.00 in damages (as set forth in the Partial Final Award), plus $41,814.33 in reasonable attorney fees, $9,152.52 in costs, for a total award of $333,094.85 against Respondent Bright Path Laboratories, Inc.

- Respondent Bright Path Laboratories, Inc. is awarded $31,442.00 in reasonable attorney fees and $2,960.09 in costs, for a total award of costs and fees against Claimant KFM Clinical Solutions, LLC, of $34,402.09.

Issued: January 27, 2025

John W. Madden, IV
Arbitrator